IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| IMA JEAN EVANS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 315-096 |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security | ) |
| Administration,[1] | ) |
| | ) |
| Defendant. | ) |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Ima J. Evans appeals the decision of the Acting Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

**I.    BACKGROUND**

Plaintiff is a sixty-five year old female with an eighth grade education and past work experience as a machine operator, looper, and bundler. Tr. ("R."), pp. 113-20, 101, 106.

---

[1] The Court takes judicial notice that on January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), the Court **DIRECTS** the Clerk of Court to substitute Nancy A. Berryhill as Defendant in this case.

Plaintiff first applied for DIB on November 7, 2001, alleging a disability onset date of December 22, 2000, but later changed the onset date to July 28, 2001. R. 91, 1012. Plaintiff's first application was denied initially and upon reconsideration. R. 67-69, 72-74, 91-93. Plaintiff requested a hearing and an administrative law judge ("ALJ") held a hearing on October 16, 2002. R. 652-69. On August 3, 2003, the ALJ held a supplemental hearing after Plaintiff was evaluated by several physicians. R. 605-18. On August 27, 2003, the ALJ issued an unfavorable decision, and Plaintiff sought review from the Appeals Council ("AC").

While awaiting review from the AC, Plaintiff filed a new application for DIB on September 24, 2003. R. 295-97. This new request was denied initially and upon reconsideration, and Plaintiff once again sought a hearing before an ALJ. R. 274-77, 279-82. Plaintiff's second hearing was held on March 14, 2006. R. 564-602. While Plaintiff awaited the results of the March 2006 hearing, the AC granted Plaintiff's requested review of the first unfavorable decision, vacated the decision of the ALJ, and remanded the matter for further proceedings. R. 495-98. Subsequently, the ALJ from the March 2006 hearing issued the second unfavorable decision on July 17, 2006. R. 477-86. Plaintiff requested review of the second unfavorable decision by the AC, and on November 22, 2006, the AC vacated the second decision as well. R. 508-10. The AC remanded the matter for further proceedings and also directed that the earlier remand of the first unfavorable decision be considered in conjunction with the remand of the second unfavorable decision so that a consolidated decision could be rendered on both of Plaintiff's applications. Id.

An ALJ held another hearing on December 21, 2007, and on January 25, 2008, the ALJ issued another unfavorable decision. R. 45-57. The AC denied Plaintiff's subsequent request for review, and Plaintiff filed suit in this Court requesting reversal or remand of the

2

adverse decision. Evans v. Astrue, CV 309-101 (S.D. Ga. Dec. 7, 2009). On April 29, 2011, this Court reversed the Commissioner's final decision pursuant to sentence four of 42 U.S.C. § 405(g), and remanded the case to the Commissioner. Id., doc. nos. 28, 29. The AC remanded the case to the ALJ who subsequently rendered an unfavorable decision on October 5, 2012. R. 832-34. The AC vacated the ALJ's unfavorable decision and again remanded the case to the ALJ on October 29, 2013. R. 865-69. In remanding the case to the ALJ, the AC directed the ALJ to give consideration to a vocational expert's affidavit, to give further consideration to Plaintiff's maximum residual functional capacity, and to obtain supplemental evidence from a vocational expert if warranted. R. 867-69.

On April 24, 2014, the ALJ held another hearing and heard testimony from Plaintiff's counsel and Mr. Dennis Conroy, a Vocational Expert ("VE"). R. 1126-35. The ALJ issued an unfavorable decision on June 20, 2014. R. 680-92. Applying the sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant has not engaged in substantial gainful activity during the period from her alleged onset date of December 22, 2000, through her date last insured of December 31, 2004 (20 C.F.R. § 404.1571 *et seq.*).

2. Through the date last insured, the claimant had the following severe impairments: osteoarthritis of the back, mild carpal tunnel syndrome, and obesity (20 C.F.R. § 404.1520(c)).

3. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

4. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional

>    capacity to perform light work[2] as defined in 20 CFR § 404.1567(b) except the claimant can sit no more than two hours continuously and eight hours total in an eight-hour workday and can stand and walk no more than two hours continuously and six hours total in an eight-hour workday. The claimant can no more than frequently use her hands for fine and gross manipulation and can no more than occasionally climb ladders and scaffolds or crawl. The claimant should avoid frequent exposure to temperature extremes.
>
> 5.  Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

R. 680-92.

When the Appeals Council ("AC") denied Plaintiff's request for review, R. 670-72, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in evaluating Plaintiff's RFC. See doc. no. 24 ("Pl.'s Br."). Specifically, Plaintiff asserts there is no evidence to support the ALJ's RFC finding she could stand and walk no more than two hours continuously and six hours total in an eight-hour workday. (Id. at 14.) The Commissioner maintains the decision to deny Plaintiff benefits is

---

[2]Light work is defined as:

> "lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds . . . a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

20 CFR § 404.1567(b).

4

supported by substantial evidence and should therefore be affirmed. See doc. no. 26 (Comm'r's Br.").

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence

and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

Plaintiff argues the ALJ erred because "the record does not contain any evidence to support the residual functional capacity determination . . . that [Plaintiff] could stand and walk two hours continuously and six hours in an eight-hour day." See Pl.'s Br. 13. Plaintiff argues the most restrictive medical opinion is Plaintiff can only stand thirty minutes a day, and the least restrictive opinion is Plaintiff can stand only two hours a day. Id. As explained below, the ALJ thoroughly explained and cited substantial evidence to support his RFC finding regarding Plaintiff's walking/standing limitations. Therefore, Plaintiff's argument does not form a valid basis for reversal or remand.

### A. Step Four Framework for Formulating Plaintiff's RFC

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted).

Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012). Limitations are divided into three categories: (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (citing 20 C.F.R. § 404.1569a(b)-(d)).

When determining whether a claimant can return to her past relevant work, the ALJ must consider "all the relevant medical and other evidence." Phillips, 357 F.3d at 1238. The ALJ has the responsibility of assessing a plaintiff's RFC based on all the relevant evidence. 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c). "Although a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ." Green v. Soc. Sec. Admin., 223 F. App'x 915, 923 (11th Cir. 2007). A doctor's opinion regarding what a claimant can still do is different from an ALJ's assessment of a claimant's RFC. The final responsibility for determining a plaintiff's RFC is reserved to the Commissioner. Cooper v. Astrue, 373 F. App'x 961, 962 (11th Cir. 2010) ("The task of determining a claimant's ability to work is within the province of the ALJ, not a doctor . . . .").

7

**B. The ALJ's RFC Finding Plaintiff Could Stand and Walk Two Hours Continuously and Six Hours in an Eight-Hour Day is Supported by Substantial Evidence.**

Plaintiff's sole argument is no evidence supports the ALJ's RFC finding she could stand and walk no more than two hours continuously and six hours total in an eight-hour workday. (Pl.'s Br. at 13.) Plaintiff asserts "all evidence from the medical professionals who gave functional opinions limit [Plaintiff] to standing/walking for two hours per day or less." Id. In support, Plaintiff cites (1) treating general practitioner Dr. Souza's completion of a checkbox form limiting Plaintiff to standing thirty minutes total of an eight-hour workday; (2) treating internist Dr. Kavuri's physical capacities evaluation limiting Plaintiff to sitting/standing thirty minutes continuously and standing a total of one-hour in an eight hour workday; and (3) non-examining internist Dr. Rubini's medical source statement limiting Plaintiff to standing/walking for a total of one hour in an eight-hour workday. R. 214-17, 1034-35, 1045, 1110-14, 1118.

The Court finds the ALJ relied on substantial evidence in determining the stand/walk RFC, based on (1) the opinion of consultative neurologist Dr. Tsai; (2) the opinion of consultative orthopedic examiner Dr. Wallace; (3) Plaintiff's admission to Dr. Kirkland regarding her ability to walk; (4) treatment notes and findings by Dr. Souza that contradict her opinions on the checkbox form; and (5) repeated findings by multiple physicians that Plaintiff's spine and gait were normal and her range of motion was not restricted.[3]

---

[3]Contrary to Plaintiff's contention, the ALJ is responsible for assessing Plaintiff's RFC, and does so based on all the relevant medical and other evidence. 20 C.F.R. §§ 404.1546(c); 1545(a)(3). The ALJ is free to adopt a medical source opinion in his RFC determination, but is not required to do so and may formulate his RFC finding without any supporting medical source opinion. Green, 223 F. App'x at 922-24 (upholding ALJ's RFC finding when ALJ discredited only medical source statement and based RFC finding on remaining medical record); Pratt v. Astrue, No. 2:12-CV-1794-RDP, 2013 WL 4056220, at *8 (N.D. Ala. Aug. 12, 2013) ("Further the regulations do not require the ALJ to use a

### 1. Consultative Examining Neurologist, Dr. Stella Tsai

On January 28, 2003, Plaintiff saw consultative examiner and neurologist Dr. Stella Tsai complaining of low back pain. R. 228-29. Dr. Tsai conducted an examination of Plaintiff's lumbar spine which revealed the spine was without point tenderness, paraspinal musculature spasms, or trigger points. R. 229. There was no tenderness of the SI joint or sciatic notch. Id. There was no negative straight leg raising, palpable hypertrophic nerves, or Tinel's of the fibular head. Id. Dr. Tsai opined Plaintiff's range of motion in the low back was satisfactory, and found no neurological disability. Id.

Dr. Tsai also submitted a medical assessment of Plaintiff's ability to do work-related activities. R. 235. Dr. Tsai opined Plaintiff had no lifting or carrying impediments, was not limited by any standing or walking impairments and could thus stand and walk eight hours in a workday, and had no sitting impairments. Id. Dr. Tsai found Plaintiff did not suffer from any restrictions in climbing, balancing, stooping, crouching, kneeling, crawling, reaching, handling, fingering or feeling. R. 236. The ALJ considered Dr. Tsai's findings and afforded them great weight with the exception only of Dr. Tsai's finding that Plaintiff did not suffer from any handling, fingering, and grasping impairments. R. 687.

### 2. Consultative Examining Orthopedist, Dr. Stanley Wallace

On December 4, 2003, Plaintiff saw consultative orthopedic examiner Stanley Wallace complaining of gastroesophageal reflux disease (GERD), and pain in the joints, foot, ankle, knee, hip, shoulder, elbow, wrist, hand and spine. R. 398. Plaintiff also complained

---

medical source opinion in his RFC determination."); Langley v. Astrue, 777 F. Supp. 2d 1250, 1261 (N.D. Ala. 2011) ("[T]his circuit does not does not require an RFC from a physician . . . .").

of swelling of the hands, difficulty lifting heavy objects, nausea, and difficulty walking and with prolonged sitting or standing. Id. Dr. Wallace conducted a physical exam, and although Plaintiff exhibited a limping gait, Dr. Wallace opined Plaintiff did not require a cane for ambulation. R. 399. Dr. Wallace noted Plaintiff had a full range of motion of the ankles, knees, hips, lumbar and cervical spine, writs, elbows, and shoulders. Id. After examining the relevant medical evidence, the ALJ gave significant weight to Dr. Wallace's findings. R. 688.

### 3. Plaintiff's Admission to Treating General Practitioner Dr. James Kirkland

Despite Plaintiff's claim to the Social Security Administration that she could not walk or exercise more than five to ten minutes due to her arthritis, R. 684, on January 26, 2004, Plaintiff reported to Dr. James Kirkland as follows: "I'm feeling a little better. I walk a good bit every day. I'm going to start walking an hour every day." R. 350. The ALJ relied on this admission in determining the stand/walk RFC. See R. 684.

### 4. Treatment Notes and Findings by Treating General Practitioner, Dr. Souza

Dr. Souza saw Plaintiff numerous times between 2000 and 2004. On September 27, 2002, Dr. Souza prepared a checkbox physical capacities evaluation, and determined Plaintiff could only stand for thirty minutes during an eight-hour workday, sit for two hours of an eight-hour workday, would need to recline several times a day, could not lift any weight, handle, finger, pick, pinch or otherwise work with her hands, and could only walk about 500 feet daily. R. 214-17. The ALJ gave Dr. Souza's physical capacities evaluation no weight because: (1) Dr. Souza was not a specialist in either orthopedic or neurological medicine, (2) her treatment notes contained no abnormal range of motion, muscle strength, or sensory findings consistent

with her opined limitations, and (3) Dr. Souza did not refer Plaintiff to a specialist. R. 687.

Indeed, Dr. Souza's treatment notes and findings routinely contradict the extreme limitations found in the September 27, 2002 physical capacities evaluation. On November 24, 2000, Dr. Souza evaluated Plaintiff and found Plaintiff exhibited a smooth and balanced gait without scoliosis or kyphosis, and did not exhibit any muscular atrophy or weakness. R. 190. On April 17, 2001, Dr. Souza conducted X-rays of Plaintiff's hips and lumbar spine. R. 151. The imaging studies revealed Plaintiff's left and right hips were normal, with preserved joint spaces without effusion or arthritic changes. Id. Plaintiff's lumbar spine exhibited normal sized vertebral bodies with preservation of disc space height, anatomic posterior alignment, and no evidence of fracture. Id.

Dr. Souza evaluated Plaintiff again on December 11, 2001, and opined Plaintiff exhibited a coordinated and smooth gait. R. 181. On February 14, 2002, Dr. Souza conducted X-rays on Plaintiff's right wrist, left foot, and lumbar spine. R. 385. Plaintiff's lumbar spine X-ray revealed no fracture, dislocation, disc narrowing, or significant congenital defects or arthritic changes. The lumbar spine X-ray only revealed muscle spasms and mild osteitis condensans ilii bilaterally. Id. More X-rays were conducted in March of 2004, revealing there was no fracture, dislocation, disc narrowing, significant congenital defects, or arthritic changes in Plaintiff's lumbar spine, and that Plaintiff presented a normal lumbar spine. R. 417.

Although a treating physician's opinion ordinarily must be given substantial weight, an ALJ is entitled to assign a treating physician's opinion no weight if (1) it is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion was conclusory or inconsistent with the doctor's own medical records. Winschel v. Comm'r of Soc. Sec., 631

11

F.3d 1176, 1179 (11th Cir. 2011). Here, the ALJ provided good cause to assign Dr. Souza's conclusory checkbox evaluation no weight because, as the ALJ explained, Dr. Souza's treatment notes and objective medical testing directly contradicted the evaluation. R. 687; See Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with doctor's treatment notes).

### 5. Repeated Findings of Normal Spine and Gait

In reaching the walk/stand RFC finding, the ALJ cited numerous findings by multiple consultative and treating physicians that Plaintiff's spine and gait were normal, and her range of motion was unrestricted. Dr. Tsai found Plaintiff was not limited by any standing or walking impairments and could stand and walk eight hours in a workday. R. 235. Dr. Wallace noted Plaintiff had a full range of motion of the ankles, knees, hips, and lumbar and cervical spine. R. 399. On multiple occasions, Dr. Souza opined Plaintiff exhibited a normal and smooth gait. R. 181, 190. Dr. Souza conducted numerous X-rays of Plaintiff's lumbar spine, knees, ankles, and feet, and these X-rays revealed largely normal findings. R. 385, 417.

### C. Plaintiff has Waived All Other Arguments.

The Court notes Plaintiff has raised numerous arguments in her reply and surreply briefs that were not present in her original brief. (See doc. nos. 27, 29, 31.) Issues raised in a reply brief are not properly before the court where they could and should have been presented previously. See Newsome ex rel. Bell v. Barnhart, 444 F. Supp. 2d 1195, 1203, n. 7 (M.D. Ala. 2006) (declining to consider incomplete record claim raised in reply brief); Lewis v. Mercedes-Benz USA, LLC, No. CIV.A.1:03CV4000-JOF, 2004 WL 3756384, at *2 (N.D. Ga. Sept. 13, 2004) ("This court will not consider arguments raised for the first time in a reply brief."); Reliance Ins. Co. of Illinois v. Richfield Hosp. Servs., Inc., 92 F.

Supp. 2d 1329, 1332 (N.D. Ga. 2000) ("In general, a court should not consider arguments raised for the first time in a reply brief."). Here, Plaintiff's failure to raise these arguments in her original brief has resulted in their waiver and the Court will not consider them. See Access Now, Inc. v. Sw. Airlines, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

## IV. CONCLUSION

In sum, the ALJ's RFC finding Plaintiff can stand and walk for two hours continuously and a total of six hours in an eight-hour workday is supported by substantial evidence. The ALJ evaluated the entire medical record in reaching his RFC determination, and was not required to adopt the functional findings of any physician. The Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 21st day of February, 2017, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA